UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-P498-H

RODNEY CURTIS SIMMONS                                                                    PETITIONER

V.

LARRY CHANDLER, WARDEN                                                                RESPONDENT

**MEMORANDUM OPINION**

Respondent, Larry Chandler, Warden of the Kentucky State Reformatory, has moved to dismiss the petition for writ of habeas corpus. This case arises from Petitioner's conviction for essentially terrorizing his former spouse. Petitioner alleges no particular constitutional violation during the prosecution, except that he believes that the evidence was insufficient to convict him. The Court finds no basis for granting the writ on these grounds.

I.

The relevant facts are these. Simmons was married to Rachel A. Simmons for almost nine years. On February 12, 2003, Rachel filed for divorce and the court papers were served on him on February 14, 2003. Simmons apparently reacted to these proceedings by engaging in a pattern of destructive and harassing behavior.

On March 13, 2003, Rachel came home to her apartment in Hardinsburg and found that someone had forced entry into the apartment. Upon entry, she found bleach on the carpet; sofa and recliner had been slashed with a knife; the end of the mattress had been slashed with over 100 slash cuts and the recliner had numerous holes, and the arm rests had been ripped off.

On April 17, 2003, Rachel Simmons was living at another address in Hardinsburg. She woke up that morning, looked out her window, and noticed that her 1983 Oldsmobile had been seriously damaged. She also found a huge dent in the fender. The damages totaled over $1,000.00. Officer Ron McKinney responded to the scene. Officer McKinney found particles of a red tail light lens, which he suspected might have come from an automobile which had backed into Rachel's car. Later that day at about 5:15 p.m., Officer McKinney spotted Simmons and decided to stop him. He noticed that Simmons' tail light was not out. Officer McKinney asked Simmons whether he had replaced the tail lights. Simmons replied that he had not changed the lights since he had owned the car. Officer McKinney forwarded the pieces of red lens which he had recovered at the scene to the Kentucky State Police Crime Laboratory in Frankfort, where they were examined by Lara R. Mosenthin. Mosenthin determined that a broken piece from the scene matched the broken tail light which had been replaced on Simmons' Ford Festiva.

On April 17, 2003, Kentucky State Police Trooper Neil Pagan drove to Simmons' residence. No one was at home, but through the back door, he observed a pair of tennis shoes with white paint. After obtaining a search warrant for the house, Deputy Sheriff Craig Ball searched the residence and found Simmons' clothing, including a pair of Levi blue jeans that had white paint on the legs. They found white paint on a red shirt.

The officers located Simmons' mother's vehicle at his mother's residence. They served the search warrant on the car. Inside the car, they found a hammer with white paint, that appeared to have been the size of the hole in Rachel's windshield. There was also white paint on the floor mat and the driver's side seat.

On April 29, 2003, Officer McKinney filed an affidavit in the Breckinridge District Court

to obtain a search warrant of Simmons' residence in Hardinsburg. That day, District Judge Shan Embry signed the warrant. Upon searching Simmons' residence, officers found the four photos of the couple's children. Rachel Simmons identified the photos as the four which had been stolen from her residence.

On June 2, 2003, the grand jury of the Breckinridge Circuit Court indicted Simmons, charging him with (1) burglary in the second degree; (2) theft by unlawful taking under $300; (3) criminal mischief in the first degree; and (4) criminal mischief in the first degree. On July 11, 2003, the grand jury rendered a second indictment, charging Simmons with (5) criminal mischief in the first degree; (6) tampering with physical evidence; and (7) retaliating against a participant in the legal process.

On February 10, 2004, Simmons was tried before a jury of the Breckinridge Circuit Court, which found him guilty of (1) burglary in the third degree; (2) criminal mischief in the first degree (during the burglary of the residence); (3) criminal mischief in the first degree (car paint incident); and (4) retaliating against a witness. The jury acquitted Simmons of criminal mischief in the first degree (car fender and quarter panel damage) and tampering with physical evidence. On March 4, 2004, the Breckinridge Circuit Court entered judgment against Simmons, sentencing him to imprisonment for five years.

From these convictions, Simmons appealed to the Kentucky Court of Appeals, but on February 18, 2005, that court affirmed his convictions. Simmons then filed a motion for discretionary review in the Kentucky Supreme Court, but on August 17, 2005, that court denied review.

II.

Simmons argues that the evidence against him was insufficient as a matter of law. Simmons has failed to prove, however, that the state court adjudication resulted in a decision that was either (1) "contrary to clearly established federal law as determined by the Supreme Court of the United States: or (2) "involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States."

As to this issue, the Kentucky Court of Appeals correctly ruled as follows:

> Rodney first argues that the evidence was insufficient to prove first degree criminal mischief or retaliation against a participant in the legal process in the 'car paint incident.' He argues that the Commonwealth failed to prove that he was the perpetrator. We disagree. The finding of paint, paint-stained clothes, and a hammer in his possession immediately after the car used by Rachel had been splattered with paint, the windshield and side window broken out, and the tape/radio jerked from the vehicle, when accompanied by the other circumstances immediately following the filing of the divorce, was sufficient to support his conviction.
>
> He also complains that there was no proof that the damage was more than $1,000.00. Rachel testified that the damages were more than the threshold figure. Common sense also instructs us the same. Rodney raises an argument that the car was not proven not to be non-marital property, and that he had the right to believe he could destroy his own car. No matter to whom the car was titled, it had been placed in Rachel's possession ending final resolution of property issues in the divorce. It was for her use. Rodney had no right to believe that he could destroy it, thereby depriving her of the use of it, and frustrating the order of the domestic court.
>
> Rodney also maintains that the evidence did not prove that the damage to the car occurred because of her participation as a witness in the legal process. The jury is entitled to make rational inferences from the evidence. *Dishman v. Commonwealth,* 906 S.W.2d 335, 340-1 (Ky. 1995). From the facts herein, especially that these incidents began immediately following the initiation of divorce proceedings, which would necessarily involve Rachel's participation as a witness and party, the jury was entitled to infer

4

> that was the cause.
>
> As to the burglary and criminal mischief charges arising from the illegal entry into, and destruction of property within, the apartment of Rachel, Rodney makes two arguments. He first argues that the Commonwealth failed to prove damages of at least $1,000.00. The door was forced open. Bleach was spread and splattered on the carpet, the couch and chair had been slashed and stabbed with a sharp instrument multiple times. The mattress had been similarly slashed. The Freon line in the refrigerator had been crimped, causing it to malfunction and destroying the food stored therein. Rachel and Chief McKinney testified that the damage was more than $1,000.00. The evidence was sufficient. As far as the burglary charge, the surrounding circumstances coupled with the fact that photographs stolen from the apartment at the time of the vandalism were found in Rodney's possession is sufficient to support the conviction.

Simmons was not entitled to a directed verdict of acquittal. The evidence produced at trial against Simmons appears to have been very strong. The jury no doubt took all of the facts and circumstances into account to determine whether Simmons had committed these acts to retaliate against a participant in the legal process. It is well-settled law that intent can be inferred from a person's conduct.

The standard to be followed by a trial judge in ruling on a motion for a directed verdict of acquittal was given in *Trowel v. Commonwealth*, Ky. 550 S.W.2d 530 (1977), in which the Kentucky Supreme Court held, "If under the evidence as a whole, it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Id.* at 533. This standard remains essentially unchanged. *See Jackson v. Virginia,* 443 U.S. 307 (1979); *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983); *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). There was more than sufficient evidence to support the jury's verdict that Simmons had committed the offenses of burglary in the third degree and

criminal mischief in the first degree.

Simmons has failed to prove that the state court adjudication resulted in a decision that was either (1) "contrary to clearly established federal law as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States."

The Court concludes that an evidentiary hearing in this case unnecessary because the issues are easily resolved by reference to the state court record. 28 U.S.C. § 2243; and *Townsend v. Sain*, 372 U.S. 293 (1963).

The Court will enter an order consistent with this Memorandum Opinion.

cc:   Counsel of Record